ILLINOIS CENTRAL RAILROAD CO. *v.* E. D. CARRAWAY.

[58 South. 707.]

1. MASTER AND SERVANT. *Injuries. Sufficiency of evidence. Discovered peril. Code 1906, Sec. 1985.*

In a suit for the death of a car inspector against a railroad company by being run over by a switch engine, where the evidence showed that the switch engine was being preceded by a flagman to whom the engineer looked for signals, and where a witness testified that this flagman saw deecased on the track and must have realized that he was unaware of his danger in ample time to have warned him of the approaching engine, or to have signalled the engineer who then could have stopped the engine before it struck deceased. In such case leaving out of view Code 1906, Sec. 1985, altogether, a peremptory instruction for defendant should not be given.

2. SAME.

In such case even though deceased was guilty of contributory negligence, if the employees of appellant in charge of the train, after discovering his peril, could by the exercise of reasonable care have avoided inflicting injury it was their duty to do so.

APPEAL from the circuit court of Madison county.

HON. W. A. HENRY, Judge.

Suit by Mrs. E. D. Carraway against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

For former opinion, see 58 South. 222.

This was an action for damages based upon the alleged negligence of the railroad company in the killing of one W. D. Moore, a brother of appellee. The case was affirmed without written opinion on April 22, 1912. See 58 South. 222. A suggestion of error was afterwards filed by the appellant.

Moore was car inspector at Canton for the railroad company and had served in that capacity for three years

and had been employed by the company in various lines of work for fourteen years. Canton was a relay station at which point crews were changed and cars which had gotten out of order on the run were taken out of the trains and sent into the shops for repair. On the day of the accident a through freight, called a manifest train, was being brought through Canton, the destination being New Orleans. At Canton, Moore after inspecting the train directed a certain car to be taken out of the train and sent to the shops for repair; after this had been done, a new engine was to be attached to the train so that it might proceed to New Orleans.

There are a number of tracks at Canton, and the engine, in charge of engineer Munn, which was to take the manifest train, was standing on a side track called a pocket track when Moore instructed the conductor that he could proceed with his train; thereupon the signal was given to Munn who ran his engine out of the pocket track onto the track where the manifest train was standing, and proceeded to back his engine up to the train in order to couple. As the engine backed up to the train it pushed its tender, which was heaped up with coal so that a view of the track by the engineer and fireman was somewhat obstructed at points close to the tender. As the engine backed northward in order to make the coupling, engineer Munn was at his place on the right hand side of the cab, and the fireman was on the left side of the cab ringing the bell. A brakeman named Gorder preceded the backing tender at a distance variously estimated from twenty to sixty feet. The engine was going at about four miles an hour.

According to the testimony of defendant's witness Gorder, the brakeman, deceased, Moore, was walking along near the track talking to Gorder and stepped on the track at a point too close to the tender for him to be seen by the engineer or fireman, both of whom testified that they were on the lookout. Two or three per-

sons saw his peril and shouted a warning, but a switch engine was standing on an adjoining track and the escaping steam was making some noise. At any rate, Moore seems not to have heard the warning, and the backing tender struck him and threw him to the ground and one wheel of the tender passed over his head killing him instantly. Among others who saw Moore's dangerous position was a switchman named Ward who says that he tried to signal the brakeman, Gorder, and the fireman, but could attract the attention of neither of them. The fireman testified that, when he saw that some one was evidently in peril, he called, "Look out," and the engineer immediately put on his emergency brake and stopped the engine in about four feet but too late to prevent the accident.

There is very little conflict in the testimony. It is disputed just when Moore did step upon the track, whether immediately before he was struck, or whether he was walking down the track for some time before being struck. Plaintiff's witnesses also deny that the fireman was looking back toward the train to which his engine was to be coupled, and for that reason could not be warned by those who saw the peril of deceased in time to prevent the accident. Plaintiff also takes the position that the brakeman, Gorder, who was to make the coupling and who must have known of the approach of the backing engine, should have warned deceased of his peril, and, had he taken the proper precautions, the accident would have been prevented. The brakeman, Gorder, testified that he met deceased, Moore, between the tracks and stopped and asked him if everything was all right, and just as he did this he heard some one shout, "Look out," and he looked around and saw the wheel passing over deceased; that he was walking about twenty feet ahead of the backing engine; that he was on the engineer's side of the track and that Moore was on the fireman's side, and that Moore faced toward him

when they spoke; that Moore was not in any danger at that time and that he did not see him step on the track. Witness Ward, however, testified that deceased was walking down the track some distance conversing with Gorder when he was struck. Ward's testimony is in substance as follows: "The last time I saw him, just a few minutes before he was killed, he was coming across from track No. 2 over towards No. 3 track and was walking up between track No. 3 talking to Gorder. No. 51 (the manifest train) was made up on No. 3 track and I had crossed over to No. 2 track. I looked up and saw him still coming up No. 3 track talking to Gorder. He was in the middle of the track then, and I saw 51's engine backing into the train, and our engine (the switch engine) was standing in No. 2's track. I saw he didn't see this engine backing up, and I hollered to him; at that time 51's engine was about 60 feet from him. He didn't pay any attention and I hollered again—several times, and finally, I don't know whether my hollering attracted his attention or not, he was still talking to Gorder—he turned around facing east and when he did 51's engine hit him and he stumbled for several steps and caught one of his feet in the brake rigging and it turned him completely around and he fell with his head across the rail."

Defendant asked for a peremptory instruction on the ground that the facts failed to show any negligence on the part of the employees of the railroad company, and the further ground that the plaintiff was guilty of contributory negligence and that he had placed himself in this dangerous position without taking the proper precautions.

The defendant also contends that section 1985 of the Code has no application. Said section is as follows: "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall

be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employees of railroad companies."

The court refused the peremptory instruction, and the case went to the jury who returned a verdict for plaintiff for five thousand dollars, from which this appeal is taken.

*Mayes & Longstreet,* for appellant.

Taking the view of the plaintiff's witnesses themselves, they claim that the deceased was walking up the track and that Gorder was diverting his attention by talking to him. Conceding for the argument that somewhere along the line the railroad company is blamable as in the case of negligence, the plaintiff is not entitled to recover because of the manifest contributory negligence of the deceased.

The undisputed evidence in this case shows that he we was perfectly familiar with the yards, having been engaged in his existing duty for years in those yards. He was at the time in control of the train.

Granting that he was walking up the track, he was in a place where he had no business to be. He was in a place where it was not necessary for him to be, for he could just as well have walked up between the tracks in a place of perfect safety, as the witness Gorder did, without dispute. Unquestionably he was in a general way directing what was being done.

The theory of the plaintiff was that he was walking up to the train in order to inspect the air when the coupling was done. He knew, unquestionably, that the coupling was about to be made. He had released the engine and tender from the pocket track in order that it might back up and couple on. It was his business to be on the lookout, but instead of doing so, he deliberately got on the track and walked up the track in such a careless way

that this engine which was running at a rate of less than five miles an hour, he permitted to run over him. If he engaged in conversation with Gorder, it was his own act. Gorder was nothing but a flagman; he had no power to compel this inspector to talk to him or to demand the inspector's attention. The uncontradicted evidence in the case, and this is even the evidence of the witness, Mr. Ward, was that whether the deceased was between the tracks or on the track, it still was true that his face was turned to one side, toward the west side, and his head was in such a position that he had nothing to do but to turn his eyes to the left to see this approaching engine and tender.

The uncontradicted evidence is that if he had observed it, as he ought to have done, he had nothing to do but to step four or five feet, two steps, to take him into a place of entire safety at any time before the actual impact.

Under these circumstances, we claim that his contributory negligence is perfectly clear, and the peremptory instruction should have been granted on that ground. *Morehead* v. *Railroad Co.*, 84 Miss. 112; *Railroad Co.* v. *Latiker,* 53 South. 955; *Railroad Co.* v. *Moseley,* 57 Fed. 926; *Aerkfetz* v. *Humphreys,* 145 U. S. 418; *Railway Co.* v. *Stick,* 143 Ind. 449.

*H. B. Greaves,* for appellee.

I would submit this case without briefs, since such cases as this have been so often before this court and so repeatedly considered that no authority is needed to refresh this court's mind. Without commenting on them, I append a few recent opinions I have read from this court, which mean nothing if we are to lose this case, some of which I have before cited.

The question of negligence under the surrounding circumstances is for the jury: *Stephens* v. *Railroad Co.,* 81 Miss. 195, opinion by Calhoun, J.; *Allen* v. *Railroad Co.*, 88 Miss. 25, opinion by Mayes, J; *Railroad Co.* v.

*Humphreys,* 83 Miss. 721, opinion by Truly, J; *Hopson* v. *K. C. Railroad Co.,* 87 Miss. 789, opinion by Calhoun, J; *Railroad Co.* v. *Landrum,* 89 Miss. 399, opinion by Whitfield, J; *Railway Co.* v. *Murray,* 91 Miss. 546, opinion by Calhoun, J; *Railway Co.* v. *Brooks,* 85 Miss. 269, opinion by Truly, J; *Cumberland Telephone & Telegraph Co.* v. *Anderson,* 89 Miss. 732, opinion by Whitfield, C. J.; *Railroad Co.* v. *Bethea,* 88 Miss. 119, opinion by Truly, J.

"So many questions are integrated usually into the solution of the question of negligence, it is so necessary to carefully examine all the circumstances making up the situation in each case that it must be a rare case of negligence which the court should take from the jury," is the language used by the court in *Bell* v. *Railroad Co.,* 87 Miss. 234, opinion by Whitfield, C. J. This expression has been quoted and approved in a number of cases; see *Railroad Co.* v. *Wallace,* 91 Miss. 496, opinion by Whitfield, C. J; *Allen* v. *Railway Co.,* 88 Miss. 30, opinion by Mayes, J; *Jennie Owens* v. *Railway Co.,* 94 Miss. 387, opinion by Whitfield, C. J; *Hopson* v. *Railway Co.,* 87 Miss. 800, opinion by Calhoun, J; *Railway Co.* v. *Crominarity,* 86 Miss. 468, opinion by Truly, J.

It is perfectly manifest that the action of the negro fireman and engineer in backing up this train without keeping any sort of lookout, as they should have done, whereby Mr. Ward was unable to get the attention of either in order to signal them to stop, the fuss and noise from other engines and trains making it impossible to hear or to be heard, amounted to gross and wilful negligence, against which mere contributory negligence is no defense.

The twelve men that tried this case said deceased, under the circumstances shown in evidence was not negligent. It was for them to say. *Railroad Co.* v. *Rivers,* 93 Miss. 565; *Railway Co.* v. *Brown,* 77 Miss. 338, opinion by Woods, C. J. See last paragraph of opinion and

cited approved in *Railroad Co.* v. *Block,* 86 Miss. 426, opinion by Cox, J.; *Stevens* v. *Railway Co.,* 81 Miss. part of opinion at bottom of page 207; *Electric Railway Co.* v. *Carnahan,* 48 South. 617, opinion by Fletcher, J., and Whitfield, C. J.; *Magee* v. *Railway Co.,* 48 South. 724, opinion by Mayes, J.

This is not a case of deceased's own "voluntary, deliberate, wilful, reckless, exposure," being the language used by Calhoun, J., in *Sledge* v. *Railway Co.,* 87 Miss. opinion page 570, and *Railway Co.* v. *Schraag,* 84 Miss. 125 and *Morehead* v. *Railway Co.,* 84 Miss. 123, are not applicable to this case. Here it is shown that neither the engineer nor fireman were on the lookout, and if they had been deceased would not have been killed. *Pullum* v. *Railway Co.,* 75 Miss. 634 and *Railroad Co.* v. *Ruff,* 95 Miss. 165, are not applicable to this case as this case is not one of those "rare cases of negligence a court ought to take from the jury." We must take into consideration the surroundings of the deceased, in a railroad yard surrounded by moving cars, puffing engines and a multitude of bewildering noises, a place where those in charge of backing trains should take nothing for granted but be at their place of duty on the lookout.

Smith, J., delivered the opinion of the court.

Leaving altogether out of view Sec. 1985 of the Code of 1906, still the peremptory instruction requested by appellant was properly refused.

At the time the engine struck deceased it was being preceded by a flagman to whom the engineer looked for signals and, according to the evidence of Ward, a witness for appellee, the truth of which was for the jury and not the court, this flagman saw deceased on the track and must have realized that he was unaware of his danger in ample time to have warned him of the approaching engine or to have signaled the engineer who then could have stopped the engine before it struck deceased.

Granting that deceasd was guilty of contributory negligence as to which we express no opinion, if the employees of appellant in charge of the train, after discovering his peril, could by the exercise of reasonable care have avoided inflicting the injury, it was their duty so to do.

Affirmed.

Suggestion of error overruled.

MAYES, C. J. (dissenting).

In the first consideration of this case by the court I consented to its affirmance with grave doubt as to the correctness of the court's view at that time. A careful re-examination of the record convinces me that the court was in error. Under the facts of this case, as they appear to me, this court cannot affirm unless it is to say that in all cases of injury by the running of the train, no matter how the injury happens, there is liability on the part of a railroad company. The testimony in my judgment utterly fails to show any negligent act on the part of the railroad company. Nothing that the company did or left undone could have prevented this injury.

Considering the case from any standpoint the testimony warrants, it shows a clear case of gross neglect on the part of the party injured to take ordinary precaution to provide for his own safety. His injury was the direct result of his own negligence.

Section 1985 has no application to the case because the facts surrounding the injury are fully developed. The testimony offered by the railroad company shows that it was guilty of no negligence, and the testimony offered by the appellee clearly shows that the injured party was guilty of contributory negligence. I have no fault to find with the abstract law announced in the majority opinion, but it is my judgment that the facts make no case for the application of this principle.